Our final case for today is 22-1493 Sisvel v. Sierra Wireless. Mr. Carranza, please proceed. Good morning. May it please the Court. Robert Carranza on behalf of Appellant Sisvel International. First, I would just like to say thank you for the Court's flexibility in allowing me to appear remotely by video conference while I'm ill. I do apologize in advance if I cough at any point and interrupt the argument. There are multiple issues on appeal, and I'm happy to answer questions on any, but I would like to address two in detail, specifically the Board's reasoning on combining and puncturing being taught in Chen. I would like to start with combining first, where the Board's reasoning highlights the oversimplified approach that led to a lack of adequate support or explanation. Turning to page 37 of the appendix, that's where the Board first addresses the post-institution argument and evidence, and the first full paragraph above the block or at the bottom, the Board simply says that the evidence and the arguments that are submitted by Sisvel post-institution were unavailing. As I explained in our briefing, that doesn't comport with the APA standards, but what I hope to do is provide a little clarity in understanding how the Board came to that error. And I think the clearest way is to look at the next paragraph, where the Board said, instead, having considered the entire record, we are persuaded, as we initially set forth in the institution decision, the Board then cites two specific portions of Chen. Both of those have to do with accumulation, and that's a key term here, accumulation. First one is accumulating energy, and the second, which is on Apex 38, is that accumulation can be accomplished with an arithmetic logic unit. That term accumulation is key here because that's how the Petitioners, the Cross Appellate, framed this dispute. And if you look at Apex 26, for example, the first full sentence at the top of the page, the Board recounts how the Petitioner contended that Chen described the process of accumulating the code symbols from the transmitted and retransmitted code blocks as interleaving, not the less precise term combining. In other words, the Petitioners were telling the Board that interleaving, in the language of Chen, is accumulating. And therefore, as the Board also explained on page 36 of their opinion, going back to that main section, in the middle of that paragraph, the Board recounted again that argument, that accumulating different code symbols, interleaving, is what Chen calls, instead of the word used combining, in the 561 package. And so essentially what the Board had here was a lexicographical paradigm that they were looking at these terms combining and interleaving through. And that led the Board to its reasoning at the bottom of page 36, again related to the accumulate aspect, where the Board said, in the second volume of the Chen, interleaving is the exact, sorry, combining in second, so interleaving in the second volume of Chen is the exact same thing as combining in the 561 package. Okay, can I, Mr. Garza, can I ask a question? The Board clearly found that interleaving and combining are the same thing in Chen. They found it in the institution decision, and then they found it again in the final written description, written decision. Now, surely they could have gone into more detail on why that was the case, but what's wrong with it? I mean, how did they err here? It's not like this was new or unexpected. They made the same finding in the institution decision. They erred, Your Honor, by not addressing the evidence that was submitted post-institution by Sysable. And for example, that includes Mr. Bates' explanation on page 35 and 36 of the appendix that the Board recounted, where Mr. Bates explained that interleaving is a term of art, and so is combining, and that they're not the same thing. And so what the Board said instead, they focused on this idea of accumulation. But it says, okay, wait, but it actually says, even having considered Pat Noner's arguments and his response in certify, and having considered Mr. Bates' declaration and deposition testimony, and the entire record of trial, we find the argument unavailing, and it goes on to say, as we initially set forth, and it explains why they think from Chen, they are the same. So it doesn't seem to me that the Board failed to address your argument. It seems like it mentioned it and rejected it. Now, you might have preferred a greater degree of explanation as to why it was rejecting the argument. That's often the case. But how did they err? I think the need for explanation and understanding the evidence that was presented needs to be more than simply saying it's unavailing, because it addresses the issues precisely. And indeed, if you look at those two references that the Board uses at the bottom of 37 to 38, for example, there was confusion at the Board because of this idea of accumulation. Let me understand something. Is the argument you're making today, and in your brief, a sufficiency argument, an APA challenge, the Board failed to address our arguments, or is your argument that, based on what the Board said, it got it wrong, meaning a merits-related? Are you making an APA challenge or a merits challenge? It's an APA challenge that we presented in the brief, Your Honor, and the APA challenge was that the Board simply said that our evidence post-institution was unavailing. There was no other explanation. What I hope to do today is explain why that's critical, because the Board was confused and therefore had to address that evidence beyond just the procedural requirement to do so. I think, for example, the accumulation evidence that the Board cited on page 37 to 38, the first one is about accumulation of energy. We know that that applies to both types of accumulation. We can find that on 1221 of the appendix, that's the discussion of energy. But critically, if you look at the next piece of evidence that the Board cites, that accumulation can be accomplished with an arithmetic logic unit, that is the second piece of the only two potential grounds of evidence that the Board cited to say that the evidence that we presented was unavailing. That accumulation can be accomplished with an arithmetic logic unit. Critically, that's found on page 18 of Chen, which is 1219 of the record. That's in lines 36 and 37. Mr. Garza, what about the citations to column 14 of Chen, which the Board cited and are really talking about accumulating code symbol packets? And then the Board makes the finding, okay, it discloses accumulating packets. And combining packets, that's combining the code symbols you're getting from the original transmission with whatever code symbol you're getting from the retransmission. And Chen calls that interleaving. But the Board makes the fact finding, that's the same thing that the claimed invention is doing when the claimed invention calls for combining code symbols from the original transmission with code symbols from the retransmission. So, perhaps the best way to answer your question, Judge Chen, is if I back up just for a moment and try to explain simply what accumulating in Chen is. And there's no dispute about it. If you look at the claims in Chen at 1223, it claims the decoding method with the last step is accumulating. Claim four, dependent claim in Chen on 1223, explains that accumulating can be combining. Dependent claim seven explains that accumulating can be interleaving. And so combining and interleaving are two forms of accumulating in Chen and in DR itself. And critically what the Board did is they mixed them together, essentially saying combining and interleaving are both forms of accumulating and therefore they're equivalent to each other. And apple and orange might both be true, but that doesn't mean as a rational logical matter they are equivalent to each other. And the Board's error is especially clear in the recitation of the accumulation can be accomplished with the arithmetic logic unit. That reliance on page 1219 of the record, that arithmetic logic unit is only used in the exemplary embodiment, which the Cross Appellants have disavowed reliance on. And that's crystal clear in that page that it's talking about combining. So what the Board is simply saying is accumulating, collecting, can be done with an arithmetic logic unit, but that's wrong. So if you just accept the fact that perhaps the Court would look at the references to column 14 about Chen's alternative embodiment and the Board is relying at least in part on that portion of Chen discussing the accumulation of code symbols from the original transmission and the retransmissioning, and I don't want to say the word combining, but at least uniting them somehow, what is your response to the Board's at least partial reliance on that passage in Chen? Why is that not combining as the term combining is used in the claimed invention? I would say that's error because what the Board misunderstood and what the paradigm was set up for them, and what they were assuming was that accumulation in Chen meant interleaving. But it's very clear that accumulation in Chen could be combinable or interleaving. And on page 14 of Chen, that alternative embodiment is clearly defining, is clearly using interleaving. That's the importance, the criticality of Mr. Bates' testimony, where he explained that in the art, interleaving is a well-known thing, it's error correction, where you take data spread across rows and you create columns, and then you permutate that information across the rows so that you reduce the rate of the error. That does, as Your Honor said, include some form of kind of joining, or as the Board put it, collecting the symbols together. But it's important that the claims here, they don't claim interleaving, they claim combining, which is known to be that simple arithmetic combination. And indeed, the Board recognized that as they cited to the arithmetic logic unit for support. But they made that mistake of citing the arithmetic logic unit because that's only used in Chen, in the exemplary embodiment, which the cross-appellants have disavowed reliance on. And I don't necessarily fault the Board for it because it was confusing the record below. As we explained to the Board in our serve reply at Apex 566 and 571 of the record, the petitioners changed theories midstream. They disavowed reliance on the exemplary embodiment and this ALU. Their expert had relied on the ALU, had relied on this combiner, the 640. But then in the middle of the IPR, they said, we don't need that, we're not going to rely on it. And so that, I believe, is a source of the Board's confusion here. They're citing evidence from the exemplary embodiment, whereas they shouldn't have been doing it because that's not part of the invalidity approach. Indeed, I think the Board's error here in kind of taking an over-generalized view and saying apples and oranges are both fruit, and therefore an apple is an orange, can also be applied to the Board's finding on puncturing itself. And so what the Board essentially said was, selectively transmitting adjusts the code rate. There's no doubt about that. In Chen, it also teaches that puncturing adjusts the code rate. And the problem here is that the claims of the 561 patent don't claim selectively transmitting. They claim puncturing, which is a specific type of adjusting the code rate. So in essence, the 561 here is claiming an apple. Just because an apple might also be a fruit doesn't mean that it's an orange. And that's what the Board reasons, is that they both have this kind of idea of reducing the code rate. And I think the clarity there is found on page 14 of Chen, 12.15 of the record, where Chen explains that if you selectively transmit, you have two generators, and it creates a code rate of 1.5 or 1.2. Mr. Garza, you're well into your rebuttal time. Did you want to save it? I do. I will quickly wrap up, Your Honor. I appreciate that. In the next paragraph, though, they say that the puncturing of the code rates, the same generators, if you're puncturing, have a code rate of 1.2, if it's punctured, it's 3.4. So it's very clear that Chen even makes clear that selectively transmitting is a different way of changing a code rate than puncturing. And that's the Board's error there, the same assumption, the high-level assumption, they made with the buying. And with that, I would like to reserve the remainder of my rebuttal time and list your questions. That sounds good. Thank you very much, Mr. Garza. Ms. Merrill. Thank you. Please proceed. Thank you. May it please the Court. The parties have obviously raised a number of issues on appeal. My colleague has spent quite a bit of time on their issues on appeal, so I want to make sure I briefly address those, but I will do my best to move quickly so we have time to address cross-appellant's issues as well. So turning first to combining and interleaving, counsel has presented some new arguments based on the claims of Chen that haven't been presented below, or in my understanding. Did the Board make a mistake at 837, 838 when it seemed to be relying on the idea of accumulating energy as being the matching up with the combining? Your Honor, I believe the Board had it spot on on Appendix 36 when they addressed, just as you did as well, page 14 of Chen at 1215, where it discloses exactly the same type of accumulation that we're talking about here. I can read from Chen in particular, where it describes the code symbols for the retransmitted packets, and this is at 1215, line 9, or 8, are interleaved, not combined, with the corresponding code symbols from prior transmissions. So what they're talking about, and they're providing in great detail, in the particular embodiment that we have consistently, and I respectfully disagree, have ever changed course on, we have consistently always relied on this embodiment, presented on 1215 for anticipating the claims of the 561 patent, describes taking one set of code symbols from the original transmission, a different, keyword different, set of code symbols from the retransmission, and mushing them together. Use whatever term you want, whether it's combining, interleaving, accumulating, collating, I think I've seen them all across the briefing, bringing those two different packets together. And that's exactly the analysis that the board provided at 36, when it talks about Chen disclosing exactly that, in the connection with the particular embodiment that the cross-appellants were relying on. So, what do you think was going on at 837, 838, where they're talking about accumulating energy? I think the board was trying to refer to... That's a different embodiment than the embodiment you're relying on, right? Right. I think the board intended to refer to the accumulation description, at page 18 of Chen, which is 1219 of the appendix, where it did explain that accumulation can mean these different things. But there's no doubt that when we're talking about the particular embodiment that we've consistently relied on, it is this second form where you've got the different code symbols from the transmission and retransmission being brought together. And that the board's analysis of that is detailed, and does describe it here, in the final written decision on 36. And I'd also point out that the board's analysis is supported more than just by one page. The board has a helpful explanation in appendix 26, and then walks through its analysis at 35 to 38. And so, while the board might mention the other form of accumulation, it in no way undercuts the thorough analysis it did of the actual form of these symbols being brought together that we relied on, below. Is puncturing and selective transmission different from each other? Not at all. And we provided, below, a very detailed 200-plus page declaration, walking through the state of the art. Puncturing is anything that removes coded data symbols. You've got the channel coding, which is adding symbols, and puncturing is tailoring it down. Whether you're taking away a little or none, that's puncturing, and that is what is being done here. Right. But there's nothing in Chen that actually states, we're going to generate all the code symbols, and then we're going to delete two of the four code symbols for each data bit. I respectfully disagree that there's nothing in here to a procedure that says that, because Well, I'm just saying, expressly saying, it says that to a common reader like myself. I didn't see a sentence that says that. I understand the point you're making, but I would refer to Dr. Kikaios' detailed explanation in his declaration that walks through how a convolutional encoder works, and by virtue of it being a convolutional encoder, a procedo would understand it is necessarily always generating this one-fourth coded data block, always. And so if you're saying that you have a one-half coded data block coming out of it, it means that you have cut or punctured, and you've removed some of the coded data symbols to reduce down to that one-half coded data block. And so I appreciate the point you're making, Your Honor, but I respectfully disagree that to a procedo, and there was ample evidence below demonstrating how a procedo would have understood Chen's disclosure of a convolutional encoder to convey this already punctured coded data block. Means for detecting? Means for detecting. Happy to jump there. Thank you, Your Honor. So on indefiniteness, as you're all aware, the Board declined to address the unpatentability of Independent Claims 5 and 10. Now we had provided a detailed chart in the materials at Appendices 967 to 969 that shows that these claims are substantively identical to Claim 1, which is already found to be invalid as obvious over single reference obviousness. And so in view of the fact that the mere identical claims, with the only differentiation being that instead of claiming a need for retransmission, simply a means for detecting, that merely restating that shouldn't allow these claims to survive the IPR process. The parties and the Board... We still have to go through the 112-F exercise. We do. We do. Finding corresponding structure. Happy to jump straight into that. And so we believe that we presented below enough evidence that there was at least some corresponding structure, enough corresponding structure that the Court could have proceeded through with its invalidity analysis under 102-103. So you want a remand? Yes, Your Honor. And that's under the Intel case in the rest, right? Exactly. So was that an issue on which you had a burden to raise that issue? Was that... And you didn't argue to the Board that it had this duty? What we've argued below that the Board had enough... So the first question under the Intel is whether or not it's impossible, right? Once you found that there was no structure, so claim fails under means plus function, can it still be looked at for 103? So we don't know the answer to the impossibility question. I would say, Your Honor, that the Board's decision to the contrary suggests that it is very much possible. Well, suggested. That's not the same thing. No, they did not... Your remand would be for two purposes. One, first for the Board to decide if it's impossible, and then if it's not impossible to do the trick. Correct, Your Honor. Okay. So my question is, did you have a burden to raise that, or did you waive that argument? You didn't ask the Board for that when you were down there. So I had reviewed, based on the Court's instruction in Intel v. Qualcomm, that the Board has already been challenged with this task of identifying whether or not it was possible. I guess I would see that as the Board's responsibility, but I will say petitioners did provide... So it was an independent obligation of the Board. It's not an issue that you have to raise? That would be my... Yes, Your Honor. Coming out of SAS. Yes, Your Honor. So I will go back to the sufficiency of what we did demonstrate. So whether or not it provides the adequate corresponding structure, we have and were able to, relying on the 561 specification, point to some corresponding structure, that is clearly associated with the means for detecting 224. Are you relying just on the three letters ARC in the box for means 224 in Figure 2? Or are you really relying on Column 2, where it says hybrid FEC slash ARC? I would argue it's the combination of both, but... I don't know what that means, the combination of both. The background section already says ARQ in there. So in what way are you relying on both? Well, so you're exactly right. Those are the two spots in the specification. So the ARC in that box is certainly clearly one-for-one associated in the means for detecting 224, but right in the context of the entire specification, we believe the procedure would have understood that the claimed invention of the 561 patent was directed to GSM technology, and therefore would have therefore also understood it to disclose the use of that hybrid ARC that was discussed in the background section. We could also have a conversation about whether or not that same posito would have already known that without having to read that basic knowledge in the background as well. Okay. Whether that would have already been in their knowledge. Just to confirm, GSM already existed, that was in the background? Absolutely, Your Honor. Not the particular version we're fighting over here, but GSM was already in there, and so a skilled artisan, when they see ARC, and then they see in the background hybrid FEC slash ARC, they would understand that the means for detecting contemplated by this inventor was hybrid FEC slash ARC? Absolutely, which would include FEC and the CRC algorithm, and would have understood that's how you would implement a means for detecting. Now, I'm not going to stand here today and try my darndest to persuade you that this claim isn't indefinite, I suspect it is. The question in my mind is, is there enough structure here that the board could have and it was possible for the board? I guess what you're saying is, when you identify by name a known existing software protocol, that's enough to identify the algorithm as corresponding structure for a means plus function limitation. You don't need to go further and actually explain the known details and operational steps of which that identified protocol comprises. Is that the argument? I would say it's case specific. In here where we're talking about a known mandatory specification, where it would have been known, I think this is the case where there may be an argument made that disclosure of just the GSM protocol with ARC should be sufficient, but certainly not. I'm not attempting in any way to argue that's always the case. In your argument, are you led to a specific algorithm or to a POSA who would know, supposedly, what algorithm to write? It's the latter, Your Honor. The POSITA would know, having looked at- And is there more than one possible algorithm that could be written? I suspect that there would be different ways to write the software for running the CRC check and the forward error correction, Your Honor. Yes. I guess- So when you're identifying the structure in a main post function claim, the idea is to identify a structure specifically so that one can find equivalence thereof, correct? Correct, Your Honor. That's the whole idea. So if the possibility was that you could be led to any number of actual algorithms, right? How are you going to know which one is the equivalent of the many that might have been picked? Well, Your Honor, you don't have to persuade me. The claim is indefinite. I agree with you on that. No, no, no. I'm trying to get in terms of whether or not there- The question here was, in these claims, there's a requirement for software. You've got to have a- write an algorithm, right? Right. And it really sort of means give us a specific algorithm so then we can decide for equivalence purpose whether somebody found an equivalent because your patent team wants to be able to reach equivalence. But the patent team shouldn't be able to reach equivalence of equivalence of equivalence because I have never established the ground point, right? Agreed, Your Honor. So wouldn't that suggest that it's insufficient for purposes of disclosing the algorithm simply to disclose a place where people can write algorithms and they can write more than one? So I agree with the point you're making, Your Honor. For cross-appellant's purposes, our point is merely that there was enough disclosure here that a prosecutor would have had some understanding of the CRC- Well, I hear you almost to be saying you're willing to wave off the argument as to whether or not this was a satisfactory means plus function claim because you believe the duty is sufficient and you want to do it on a 102, 103 because it doesn't do you any good to have a funk as a means plus function claim. Yes. In fact, that's the opening I was hoping for, to point to the interests that the court has identified that are at issue here, the interests of the parties of- If we agree with you on sending it back, we can say we don't need to decide. Exactly. Although, I can't help but take a moment, if I can, to point out that Chen does disclose this exact same thing. To the extent that the 561 patent discloses that means- We're never deciding that in the first instance. But the weird thing is, it's just such a strange posture for this to be in. You have the board basically saying it can't find structure and so they can't technically hold the claims indefinite, but they have effectively done that. And then I have you, who want the claims to be invalid, arguing to me that there is in fact sufficient structure so that they should have reached the prior art issues. Does that sound about right? You are exactly right, Your Honor. It's a fine line I'm trying to walk here, but there is an interest to the parties, to the court, to the judicial process- Because there's a district court litigation and there's still a couple people- Exactly. Exactly, Your Honor. And there still remains the ability for a patent owner to continue to assert these claims against others because they have technically survived the IPR process. I guess Judge Clevenger raises an interesting point, which is how definite does the identified software protocol have to be in order to satisfy the corresponding structure requirement for 112F, 1126? If another claim had said, means for analyzing data, means for combining data, means for transmitting data, and then the specification said a processor, a conventional processor will perform those functions of combining, analyzing, transmitting data, we would probably all say that's good enough. But we also all know that there are like 10,000 different processors out there. And no one processor is truly identical. They have different little features attached to each of these 10,000 processors. But we wouldn't say, holy smokes, you didn't really go out of your way and give us a truly developed, detailed picture of which particular processor among the class of processors you are saying is your corresponding structure. So I'm trying to figure out, now we go back to your case in this software world where things are just more abstract and things can go in a lot of different directions. And as your expert seemed to suggest, I mean your expert... Is there a question in here, Judge? Yeah, start over. I'm just curious. I'm waiting for it. I'm very eagerly waiting. You shouldn't be laughing at that. You can laugh if you want, I guess. My point is that if this FEC ARQ thing is slightly indeterminate, like maybe there's some core traits that are common throughout all the different versions of the protocol, but there's a lot of different versions of doing it, is that going to destroy the ability to say, oh, this is sufficient corresponding structure despite this degree of indeterminacy? Well, it looks like your time is up, so thank you for that. I'm kidding. I'm kidding. Go ahead and answer if possible. I appreciate the line you're drawing, and I guess I'm being a little oversimplistic here, but I keep coming back to... This is very nuanced. It is very nuanced, but at core, whatever it is in the 561 patent, there's a one for one correlation in CHIN, and so I guess I don't think it's maybe necessary to delve in and figure out where that line can be drawn. I appreciate that, Your Honor, you want to drive that line. I'm not sure where it would be. I just know that it is one for one in CHIN disclosed, and therefore these patents should be walking free, or these claims should be emerging from the IPR process. Okay. Thank you, counsel. Mr. Gallarza has some rebuttal time. How much time is left? One minute. And we went over by two minutes with her, so give him four minutes on the clock, please. Thank you, Your Honors. I appreciate that I'm short on time. I don't necessarily want to open a can of worms for cross-rebuttal, but I do want to just quickly address the means for detecting and the procedural problem that I see when I picked up the briefs here. The board on Apex 59 said that the means for detecting and the lack of proven structure there was an alternative basis, an additional basis. But if you look at page 17 of the board's opinion, what the board described the lack of explanation to be was petitioner has not shown that the 5-6-1 patent presents an algorithm for how the error detection code detects an error. Now, that's been the focus of the yellow brief, and that's also been the focus of the gray brief, a gray of 24. They cite Apex 9-3-7 and Apex 9-8-6-8-9 as evidence to support that. The problem is that the board didn't stop there. The board said, nor did the petitioner explain the circumstances under which the error correcting code cannot correct errors and what constitutes sufficient certainty. That alternative function, that additional function has never been addressed, and it's not addressed by their expert, nor was it addressed in the briefing itself. That's a straightforward basis for affirmation by this court. I have a procedural question. Mr. Garza, I don't understand. The board effectively found that it couldn't identify an algorithm for a 1-12-6 limitation in this patent. They basically rejected the FEC-ARC combination. Is that right? I believe so, yes. Wouldn't that render these two claims indefinite? On the record that was presented, it prevented the board from doing it. It was the cross-appellant's burden, and they did not present the adequate evidence to show that structure. It was not our burden to come forward with our own expert to explain how those algorithms work and where they could work. I believe if presented at trial that we could do that, but that wasn't our burden to do that here. Indeed, more fundamentally, the board didn't just say it was an algorithm for detecting errors in a code. The means for detecting a need for retransmission also encompasses, as the board found, the fact that the error-correcting code cannot correct errors occurring on the channel with sufficient certainty. In other words, it detects the code, or it detects it and it could fix it, but it couldn't fix it. I'm just so baffled. Why do you want us to leave in place a decision by the board that on this record there was insufficient disclosure of an algorithm to satisfy the structural requirements of 112.6? I don't understand. Because we do not believe that their expert actually sufficiently showed the structure. Could an expert have? I believe they could have, but they did not. That was a deficiency in their case that they bore the burden for. Would it be a waste of my time to ask you what is the corresponding structure for your means for detecting claim? I'm not an expert in the field, Your Honor, but I'm sure an expert at trial could explain that with adequate opportunity. But it wasn't our burden before the board. But it was their burden on appeal to appeal not only the error detection code, but the board's further finding that they failed to explain the circumstances under which the correct errors and what constitutes sufficient certainty. That was not addressed by their expert at all in what I can see that they're citing to this court on Apex 937-986. So that deficiency is clear. Turning quickly in the remaining time that I have, I would like to address your question, Judge Chen, on the combined limitation on 1215 of the record, where in the Chen's description of the alternative embodiment, it never describes interleaving as anything except accumulated. And that's the criticality of Mr. Bates' testimony here. He said, in this field, interleaving is a special type of accumulated, and it's not the combining that's claimed in the patent. And he explained that. And essentially what the board did is they said, we disagree on page 36. And they did so based on the words that were being used. In other words, Chen was not using the word interleaving as understood in the art. And the patent wasn't using the word combining as understood in the art. And they never explained how that could possibly be, combined also with their erroneous reliance on 37 to 38 on ALUs, which did come up from their expert at 1091 and 1114. Their expert relied on that also, led the board to that error. The board was clearly wrong to rely on ALUs as support for disclosing accumulation being interleaving in the Chen reference. And unless there is further questions, I'll rest and breathe and ask that the court respectfully ask that the court reverse vacate and remand the claims that are invalidated and affirm the remand. Okay. Thank you, Mr. Gallarza. Ms. Merrill, I'll give you one minute limited to responding to what Mr. Gallarza had to say about the cross-appeal. Thank you, Your Honor. I will, thank you. I will turn back to the court's decision in Intel v. Qualcomm 21F4801. In that case, the patent challenger had agreed that the claims were indefinite, but the court had found that the board still had an obligation to determine if there was sufficient structure. So while I appreciate my friend's position that it was somehow a failing on the part of cross-appellants, the board had an obligation to do its best to find sufficient structure. And not only that, to, based on the structure that it was able to find, and we did present and the board did make some findings as to structure, then determine whether or not it was possible to assess it. What about what your opposing counsel said about A17, about how there's a failure to find an algorithm for detecting an error, and in addition, an algorithm for figuring out whether it's possible to, or not possible to correct any errors. So I believe this is a new argument, Your Honor. And so we're talking about appendix page 913, you said? Page 17 of the board decision. Oh, 17 of the board's decision. First full sentence of A17. Petitioner is not shown. Petitioner is not shown. So I respectfully disagree. We've got extensive testimony from Dr. Kakaias, both in his first declaration and the second declaration, that explain how the POSITA would understand, and that's the court's test, having presented some evidence, which is the ARQ, as Your Honor has already pointed out, to then, the court is, the board is then able to look to export testimony as to what a POSITA would have understood from it. And Dr. Kakaias did provide detailed explanation in his declaration as to what that CRC algorithm is, as understood by a POSITA. Okay, I thank you, counsel. This case is taken under submission.